IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-00422-KDB-DSC

| | |
|---|---|
| **RENFINITY, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**MATTHEW JONES, MSD ENTERPRISES, LLC AND MIL-SPEC ENGINEERING, LLC,**<br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss (Doc. No. 7), Plaintiff's Motion for Sanctions (Doc. No. 13), the Memorandum and Recommendation of the Honorable Magistrate Judge David S. Cayer ("M&R") entered February 17, 2021, (Doc. No. 20) and Plaintiff's Objection to the M&R (Doc. No. 21). The Court has carefully considered this motion, the parties' briefs and other pleadings of record in this action. As discussed below, the Court concludes after its *de novo* review that this Court has personal jurisdiction over the Defendants. Therefore, the Court declines to accept the current recommendation to grant Defendants' motion to dismiss. This matter will be returned to the Magistrate Judge to consider the remaining grounds for dismissal in Defendants' motion and reconsider Plaintiff's motion for sanctions in light of the Court's ruling on jurisdiction.

## I.   LEGAL STANDARD

A district court may designate a magistrate judge to "submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain pretrial matters, including motions to dismiss. 28 U.S.C. § 636(b)(1). Any party may object to the magistrate

1

judge's proposed findings and recommendations, and the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Objections to the magistrate's proposed findings and recommendations must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette,* 478 F.3d 616, 622 (4th Cir.), *cert. denied*, 551 U.S. 1157 (2007). However, the Court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). After reviewing the record, the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

Defendants seek to dismiss this action under Rule 12(b)(2) for lack of personal jurisdiction.[1] A party invoking federal jurisdiction has the burden of establishing that personal jurisdiction exists over the defendants. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). However, when "the court addresses the question [of personal jurisdiction in a Rule 12(b)(2) motion] on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most

---

[1] Defendants also moved to dismiss Plaintiff's complaint on other grounds, including Rules 12(b)(1), 12(b)(3) and 12(b)(6). The M&R limited its discussion of why it believed the case should be dismissed to Defendants' 12(b)(2) argument so the Court will only address that issue in this Order.

favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676 (internal citations omitted). While a plaintiff "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist," *IMO Indus., Inc. v. Seim S.R.L.*, 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006), if a plaintiff comes "forward with affidavits or other evidence to counter that of the defendant . . . factual conflicts must be resolved in favor of the party asserting jurisdiction...." *Id*.

In deciding whether this Court has personal jurisdiction over a defendant, the Court must determine: (1) whether the North Carolina long-arm statute confers personal jurisdiction; and (2) whether the exercise of that statutory power will violate the due process clause of the U.S. Constitution. *Gen Latex & Chem. Corp. v. Phoenix Med. Tech*., 765 F. Supp. 1246, 1248-49 (W.D.N.C. 1991). Because the North Carolina long-arm statute extends jurisdiction to the bounds of due process, the statutory inquiry ultimately merges with the constitutional inquiry, becoming one. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

Under this due process analysis, a court may exercise personal jurisdiction "if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interest in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 397 (4th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980) (explaining that this principle "protects ... defendant[s] against the burdens of litigating in a distant or inconvenient forum" and "acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system"); *see also Wallace v. Yamaha*

3

*Motors Corp, U.S.A.*, No. 19-2459, 2022 WL 61430, at *2–3 (4th Cir. Jan. 6, 2022). There are two types of constitutionally permissible personal jurisdiction – general and specific – but Plaintiff asserts only that specific jurisdiction applies here. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017) (referring to general jurisdiction as "all-purpose" jurisdiction and specific jurisdiction as "case-linked" jurisdiction).

To decide whether specific jurisdiction exists, the Court must consider "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst*, 334 F.3d at 396 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002)). For the first element, a defendant has availed itself of the privilege of conducting business in a state—and thus the benefits and protections of the state's laws—when the defendant "'deliberately' has engaged in significant activities within a [s]tate" or "has created 'continuing obligations' between [itself] and residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984), and *Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm'n*, 339 U.S. 643, 648 (1950)). This standard "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts," or due to "the 'unilateral activity of another party or a third person.'" *Id.* at 475 (quoting *Keeton*, 465 U.S. at 774, *World-Wide Volkswagen*, 444 U.S. at 299, and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

For the second element—whether a plaintiff's claims arise out of a defendant's activities directed at the state—"there must be 'an affiliation between the forum and the underlying

4

controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers*, 137 S. Ct. at 1781 (alteration in original). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

For the third element, the Court considers the constitutional reasonableness of exercising jurisdiction by evaluating several factors, including "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001) (quoting *Burger King*, 471 U.S. at 477). In other words, the exercise of jurisdiction should not "make litigation 'so gravely difficult and inconvenient' that a party is unfairly at a 'severe disadvantage' in comparison to his opponent." *Id.* (quoting *Burger King*, 471 U.S. at 478).

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff Renfinity, Inc. ("Renfinity") designs, manufactures, and integrates cyber-secure common access protocols, asset management, wireless communication products and specialized industry solutions for organizations. It is a Delaware corporation with its principal place of business in Scottsdale, Arizona. However, accepting as true its jurisdictional affidavits, for three years during the period of Defendants' alleged wrongful conduct, 2016-2019, Renfinity's principal officers and principal place of business were located in North Carolina. (*See* Doc. No. 10-1 at, *e.g.* ¶¶ 3, 12).

Defendant MSD Enterprises LLC ("MSD") is a limited liability company organized under the laws of Texas with its principal place of business in Texas. Its sole member is Defendant Matthew Jones, who is the manager of the company and is a resident of Texas. Defendant Mil-Spec Designs LLC, also a Texas company, was dissolved in 2020 and is no longer an existing business entity.

Renfinity alleges that in April 2014, it engaged Jones/ MSD to assist in the development of software and hardware for its "Secure Grid" product, a network that allows users to track and protect assets, people, equipment or documents in real time. However, according to Renfinity, Defendants never intended to lawfully complete the sale. Renfinity contends that rather than develop the products they agreed to sell, Defendants fraudulently bilked Renfinity out of more than $500,000 by sending Renfinity prototypes in 2017 and 2018 developed and owned by an unrelated company in addition to numerous communications falsely claiming progress and/or delays in the non-existent development of their own product. In its Complaint, Renfinity asserts claims against all Defendants for violations of Civil Rico, 18 U.S.C. § 1964(c); fraud; breach of contract; unfair trade practices under North Carolina law, N.C. Gen. Stat. § 75-1.1; unjust enrichment; and conversion.

Defendants moved to dismiss the Complaint on the grounds that the Court lacks personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), venue is improper pursuant to Federal Rule of Civil Procedure 12(b)(3), Plaintiff failed to maintain a certificate of authority to conduct business in North Carolina, and the Complaint fails to state claims under Federal Rule of Civil Procedure 12(b)(6).

### III.  DISCUSSION

As stated above, to determine whether there are sufficient minimum contacts for specific personal jurisdiction, the Court considers three factors: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the … claims [arose] out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014). The M&R found that Defendants had not "purposely availed" themselves of the privilege of conducting business in North Carolina, focusing on Defendants' lack of connections to North Carolina and the state's lack of connection to the parties' contractual relationship prior to Renfinity relocating to North Carolina in 2016. Having concluded that Renfinity had not made a prima facie showing of purposeful availment, the M&R did not analyze the remaining factors.

The Court wholly agrees with the M&R's discussion of "purposeful availment" as it relates to the contractual relationship between the parties and would affirm the M&R if Plaintiff's only claim was for breach of contract. However, Plaintiff's primary claim is not breach of contract, but rather that Defendants did not intend to complete their contractual promises and used the putative transaction as a means to commit fraud, unfair trade practices, etc. Therefore, the analysis of purposeful availment must focus on the Defendants' alleged conduct directed into North Carolina that allegedly constituted and furthered the alleged fraud. *See Felland v. Clifton*,[2] 682 F.3d 665 (7th Cir. 2012) ("We note at the outset that the nature of the purposeful direction/purposeful-availment inquiry depends in large part on the type of

---

[2] The Court notes that many of the cases principally relied on by Plaintiff in its objections to the M&R, including *Felland* and *Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1068–69 (4th Cir.1982), were not cited in opposition to Defendants' motion to dismiss, thus depriving the Magistrate Judge of the opportunity to consider them as part of Plaintiff's arguments.

7

claim at issue."); *Willow Bend, LLC v. Downtown ABQ Partners, LLC*, 612 F.3d 390 (5th Cir. 2010) ("[S]pecific jurisdiction is bound up with the claim asserted-it is claim-specific.").

In the context of an allegation of fraud, if the defendant's conduct or the content of its communications directed into the forum state give rise to the claim then that is sufficient to establish purposeful availment. *See Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1068 (4th Cir.1982); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir.1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.").

In *Vishay*, the Fourth Circuit reversed the district court's dismissal of an action based on a lack of personal jurisdiction against a California corporation with few connections to North Carolina. *See Vishay*, 696 F.2d at 1068. Despite the defendant's lack of contacts with the state, the court found that plaintiff had established personal jurisdiction based on "three letters" and "five telephone calls" into North Carolina that formed at least part of the basis of the plaintiff's claims for slander, unfair trade practices, tortious interference with contract and abuse of process. The court explained:

> De[fendant] places paramount importance on the dearth of its contacts with North Carolina. At most, Defendant wrote three letters and initiated five telephone calls to [plaintiff in North Carolina]. De[fendant] neither maintained a place of business in North Carolina nor had an agent there. De[fendant] has never entered into a contract with a North Carolina entity.
>
> Such a quantitative analysis is inappropriate….
> …
> De[fendant]'s contacts with North Carolina are essential facts in [plaintiff]'s tort claims. In determining whether due process is satisfied, it is significant that the cause of action arises out of the defendant's contacts with the forum state.

*Vishay*, 696 F.2d at 1068-69. Further, quoting *Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661, 664 (1st Cir.1972),[3] the court specifically found that "there can be no constitutional objection to [] asserting jurisdiction over [an] out-of-state sender of a fraudulent misrepresentation for such a sender has thereby 'purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'"

Similarly, in *Felland*, the plaintiffs were Wisconsin residents who signed a contract to purchase a condominium in Mexico while they were vacationing in Arizona. Upon returning home to Wisconsin, they became concerned about the project, and emailed defendant, who responded to their email and assured them that all was well. *Id.* at 671. In reliance on these assurances, Plaintiffs continued with the deal and made more of the installment payments. Throughout the ensuing two year-period, plaintiffs "received about six telephone calls" regarding the project along with "numerous communications" on the purported status of the project by email and regular mail. *Id.* Ultimately, the plaintiffs learned that there never was a project and they alleged that all of the communications they received in Wisconsin were part of a fraud. The magistrate judge (acting by consent of the parties) dismissed the case for lack of sufficient contacts with Wisconsin.

---

[3] Other Federal circuits have found specific jurisdiction when communications are dispatched to a forum state and a tort claim arises from those communications. *See, e.g., Felland*, 682 F.3d 665, 670 (7th Cir.2012) (discussed further below); *Schneider v. Hardesty*, 669 F.3d 693, 702–03 (6th Cir.2012) (letters mailed to Ohio constituted purposeful availment); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1067, 1075–76 (10th Cir.2008) (sending a notice of claimed infringement to eBay in California to suspend plaintiffs' auction in Colorado and sending an email to plaintiffs in Colorado threatening litigation subjected defendants to personal jurisdiction in Colorado); *Oriental Trading Co. v. Firetti*, 236 F.3d 938, 943 (8th Cir.2001) (sending fraudulent communications, in the form of phone calls, faxes, and invoices into Nebraska conferred specific jurisdiction).

9

The Seventh Circuit reversed, first discussing the distinctions between the "minimum contacts" analysis for tort claims and breach of contract cases:

> … personal jurisdiction in a breach-of-contract suit generally turns on whether the defendant purposefully availed himself of the privilege of conducting business in the forum state. So if [plaintiff] had brought only a breach-of-contract claim, the analysis would likely be limited to [defendant]'s conduct during contract formation in Mexico. See RAR, 107 F.3d at 1278 ("[I]n a breach of contract case, it is only the 'dealings between the parties in regard to the disputed contract ' that are relevant to minimum contacts analysis." [Defendants] never advertised in Wisconsin, nor did he or any of his associates conduct any actual business there, so the exercise of personal jurisdiction would probably not be appropriate had [plaintiff] brought only a breach-of-contract claim.

*Felland*, 682 F.3d at 674 (some internal citations omitted). However, the *Felland* plaintiff had alleged fraud in addition to a breach of contract claim, which changed the jurisdictional conclusion:

> [O]f course, the crux of [plaintiff]'s complaint is not (or not just) [defendant]'s failure to deliver the condominium unit by the promised date. Instead, [plaintiff] alleges that [defendant] engaged in a continuous fraudulent course of conduct— including the repeated communications sent to his home in Wisconsin—in a knowing and deliberate attempt to cover up the La Perla Project's lack of financing, to deceive [plaintiff] regarding the status of the development, and to induce him to make the remaining installment payments on his down payment and not to cancel the purchase.

*Id.* (parenthetical in original). In sum, the *Felland* plaintiff's claim – like Renfinity's claim here – is "not just that [defendant] intentionally misled him at the time he entered into the agreement in Mexico, but that [defendant] engaged in an ongoing fraudulent scheme that included several letters, multiple phone calls, and almost two dozen emails, all to the [plaintiff's] home in Wisconsin," which kept "the installment payments coming and [] forestall[ed] cancellation and a demand for a refund." *Id*. at 676. ("Understood from this perspective, [defendant]'s ongoing misrepresentations were 'expressly aimed' at Wisconsin … [and] considered as having been purposefully directed at the forum state.").

Renfinity's claims in this action fit the relevant circumstances of *Vishay* and *Felland*. Although the contractual relationship between the parties began outside North Carolina, like in *Vishay* and *Felland*, Renfinity alleges that the "crux" of its claims is Defendants' alleged fraud that was carried out in significant part in North Carolina through the delivery of fraudulent prototypes in June 2017 and June 2018 as well as numerous text messages, emails and phone calls directed to Renfinity's principal officers in North Carolina. Thus, although discovery and later proceedings may cast a different light on the merits of Plaintiff's allegations (on which the Court does not express an opinion), Plaintiffs have made a prima facie showing that Defendants' purposely availed themselves of the benefits of a North Carolina forum through their deliberate conduct and communications directed into North Carolina in furtherance of an alleged fraud.[4] *See* Doc. Nos. 10 – 10-11.

As noted, the M&R does not address the second and third factors in the minimum contacts test, but the record makes clear that both of those elements are satisfied here. With respect to whether Plaintiff's claims arose out of those activities directed at the State, the Court finds, as discussed above, that Plaintiff has sufficiently alleged that its tort claims relate directly to the allegedly fraudulent communications sent into North Carolina.

Finally, the Court holds that the exercise of personal jurisdiction over Defendants would be constitutionally reasonable. While Defendants might naturally prefer to defend against

---

[4] Defendant argues (as does the M&R) that the genesis of the parties' contractual relationship outside of North Carolina at Plaintiff's rather than Defendants' instigation counsels against a finding of personal jurisdiction. While a defendant's solicitation of a plaintiff in the forum state can be a significant factor in finding jurisdiction and a plaintiff's short-lived presence in a previously unconnected state might well, standing alone, be insufficient to support jurisdiction, those are only factors to be considered and do not prevent the Court from finding jurisdiction based on a three year long series of alleged fraudulent conduct directed into North Carolina, as is alleged here.

Plaintiff's claims in their home forum in Texas, there has been no showing that it would be unduly burdensome for Defendants to litigate in this Court. Also, North Carolina has an interest in this action, even though Plaintiff is not a North Carolina resident. Defendants' contacts with North Carolina are essential elements of its claims, Plaintiff seeks relief under the North Carolina unfair trade practices statute and North Carolina was Plaintiff's principal place of business during a substantial portion of the relevant time period. *See Vishay*, 696 F.2d at 1069. Moreover, there is no apparent reason that this action cannot be effectively and efficiently tried in this Court, as Plaintiff has requested. Therefore, the exercise of jurisdiction in this Court will not "make litigation 'so gravely difficult and inconvenient' that Defendants are unfairly at a 'severe disadvantage'…." *See Burger King*, 471 U.S. at 478.

In summary, Plaintiff has established that Defendants have sufficient minimum contacts with North Carolina to support this Court's exercise of personal jurisdiction over Defendants, and this matter will be returned to the Magistrate Judge for further proceedings on the remainder of Defendants' motion to dismiss and Plaintiffs' motion for sanctions (to the extent the M&R relied on the recommendation of dismissal in reaching its conclusion on the sanctions motion).

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion to Dismiss (Doc. No. 7) is **DENIED** to the extent it seeks to dismiss this action for lack of personal jurisdiction; and

2. This matter is referred to Magistrate Judge David S. Cayer for further consideration of Defendants' Motion to Dismiss and Plaintiff's Motion for Sanctions (Doc. No. 13) as set forth above.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: February 3, 2022

Kenneth D. Bell
United States District Judge